HALBERT *v.* LAMAR ADVERTISING AGENCY, et al.

No. 40518          June 3, 1957          95 So. 2d 535

438

*Wells, Thomas & Wells, Joe Jack Hurst,* Jackson, for appellant.

*John S. Beach,* Jackson, for appellee.

HALL, J.

This case involves a claim of the appellant for workmen's compensation on account of the death of her husband Allen F. Halbert, deceased, who suffered a fatal heart attack while in the employment of Lamar Advertising Agency. After a lengthy hearing the attorney-referee denied the claim on the ground that the evidence was insufficient to show that Mr. Halbert's death was causally related to the activities of his employment. The decision of the attorney-referee was affirmed by the full commission and also by the circuit court.

The proof showed that Lamar Advertising Agency was engaged, among other things, in the painting and maintenance of a large number of roadside billboards. The deceased had been in the employment of the agency for about 9 years. When he first entered this employment his duties were to go out to the location of these various billboards and paint them. This required him to climb ladders and work on scaffolds. Later his duties were changed to the extent that a portion of his time was spent painting billboards and the remainder in the preparation of sketches, which is to say that his work was inside the plant of the agency and consisted primarily of making small sketches of the art work to be done on the painted billboards.

About September 1952 he suffered a heart attack and was admitted to the hospital where he spent about ten days under examination and treatment, after which he was permitted to return to his home. He did not improve and in January 1953 he changed doctors and from that date until the time of his death in December 1954

he was under the treatment of Dr. Joseph P. Melvin, Jr. During the early period of his illness the deceased, on the advice of his doctor, laid off from work and spent most of his time at home. Finally he was permitted to return to light work under specific instructions to him and to his superior not to undertake any unusual work of an increasing physical degree. His trouble was diagnosed as hypertensive heart disease and arteriosclerotic heart disease coupled with a severe scarring of the lungs with chronic asthmatic bronchitis and pulmonary emphysema. During the period that the deceased laid off from his work the agency regularly paid him his weekly salary, even though he did no work whatever.

On his return to work he did not put in full time but was paid his regular salary. He had instructions from his superior not to climb ladders and not to undertake anything whatsoever that he did not feel able to do. He was no longer sent out to work on billboards and practically his entire time was spent in the plant. He was foreman of the paint department and each morning at the beginning of work he would instruct the employees who painted billboards as to which boards they should work on. When they returned from work he kept a record of the number of hours spent by each employee on each board and also of the materials used in connection therewith. These were turned in by him to the office. Once a month he took inventory of the paint, brushes, etc., in the paint department. These several duties required only a small amount of his time in the early morning and in the late afternoon. The remainder of his time was spent in the preparation of sketches for new billboards. These sketches were drawn on cardboard and painted for submission to prospective customers. He was specifically instructed by his employer that he should rest during the middle of the day, as requested by his physician, and that he should stop work

at any time that he felt the work was getting too heavy for him. The sketches were prepared on a drawing board and in doing this work the deceased sat down most of the time.

Shortly after Thanksgiving the deceased was called by the City and was requested to design and prepare a large Christmas display for installation in front of the City Hall. He agreed to prepare a sketch for this display and to supervise the painting of the display provided the City would furnish the painter to do the work. This display was prepared in sections of plywood under the deceased's supervision. On the day of his death these sections had been completed and had been loaded on a truck and carried to the City Hall for erection but the deceased had nothing to do with the erection thereof. It was shown that during the preparation of these sections the deceased climbed about three steps on a stepladder and did some painting on the display. After the display had been moved from the plant deceased got in his car with some other employees of the agency and drove about a mile to get coffee. After his return to the plant he was complaining with pains in the region of his heart and laid down on a table for a few minutes. He then went to the telephone and called his doctor, who did not arrive before his death. He went back to the table and tried to get on it and called for assistance but collapsed before he got back on the table. When his doctor examined him in January 1953 he then estimated that deceased's life expectancy was about two years. Actually the deceased lived approximately 23 months after that estimate.

It is undisputed that when the deceased returned to work it was on a semi-active basis and that he was given explicit instructions by his employer not to exert himself and to take a rest every day after lunch. It is also undisputed that deceased never complained that he was

overworked. It is also undisputed that when deceased undertook to rest he worried about what he should be doing instead of resting. His employer testified that deceased was by far the best sign man in Jackson and was very conscientious but that it was his nature to worry and that for two years prior to his death he worried a great deal and would tell his employer that he really was not earning the salary they were paying him. It is undisputed that the employer knew that he was supposed to rest daily and insisted that he take his rest, and that because of his long years of service and conscientious workmanship they were willing to extend every effort to do everything they possibly could for him; that they expected him to do what he could do but left the pace entirely up to him, he being the judge of what he could and should do and that during the two years before his death they did not ask him to do more work and did not indicate that they were expecting him to do more.

The claimant introduced deceased's doctor as a witness in her behalf and the doctor testified that he doubted whether deceased's work had any causal connection with his death, and that he was allowed to go back to the type of work he was doing as much from his temperament as for any other reason; the doctor said that deceased could have died at any time and it was his opinion that if deceased had been taken off of work completely and put at home that his emotional temperament would have precluded any increase in his longevity, that it probably would have hurt him more than the light work he was doing, and that the time of his death and the circumstances of his death were purely coincidental, and that his death was inevitable regardless of what work he did or did not do, and that the development of his heart trouble and the resulting occurrence in his death were not related to any exertion, emotional strain, weath-

er, temperature, meals or any other environmental influence.

A heart specialist testified for the employer and carrier and it was his opinion that the death of deceased was not in any way related to exertion, emotional strain, weather, temperature, meals, or any other outside environmental influence, and that his work did not contribute to or precipitate his death.

We have repeatedly held, in cases too numerous to cite, that where the decision of the attorney-referee and the findings of the commission and the decision of the circuit court are supported by substantial evidence and are not manifestly wrong as being against the overwhelming weight of the evidence, we will not disturb the finding. In this case there was abundant medical testimony to support the decision of the commission and the judgment appealed from must therefore be affirmed.

Affirmed.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.