ILLINOIS CENTRAL RAILROAD CO. *v.* P. F. CATHEY, ADM'R.

1. RAILROADS. *Liability to employe prior to constitution* 1890. *Negligence.*

In an action against a railroad company, where it is shown that injury was caused to an employe by the negligence of defendant, prior to the constitution of 1890, the law then in force governs. By it, the defendant is *prima facie* not liable to the employe for injury suffered in the service for which he was employed.

2. SAME. *Negligence. Connection with injury.*

The gist of such an action is negligence of the defendant, and that injury to the employe resulted therefrom. It is not sufficient merely to show negligence of the employer, and a possibility that the injury complained of was caused thereby.

3. VERDICT.   *Unsupported by evidence.   Duty to vacate.*

In such case, while maintaining inviolate the right of trial by jury, and adhering to the rule that a verdict will not be disturbed merely because the court differs from the jury in considering the evidence, yet, if after a careful consideration of the evidence for plaintiff, giving it all full credit, the court cannot discover any probable connection between the defendant's negligence and the injury suffered, a verdict for plaintiff will be set aside.

4. PRACTICE.   *Variance.   Failure to object.   Waiver.*

Where there was a variance between the declaration and the evidence, no objection being made on that ground, and an amendment would have been allowable, so as to conform the pleadings to the evidence, after verdict for plaintiff, the defendant, on appeal, will be held to have waived the objection, though the variance would have been fatal on timely objection.

FROM the circuit court of Lafayette county.

HON. JAMES T. FANT, Judge.

Action of damages by P. F. Cathey, administrator of the estate of his deceased minor son, J. W. Cathey, against the Illinois Central Railroad Company. The declaration alleges that the "said defendant, while operating its freight-cars by the powerful and dangerous agency of steam, within the limits of the city of Canton, Mississippi, a city duly incorporated, wilfully and recklessly, with gross and wanton negligence, ran its cars over and killed said J. W. Cathey." There was no other allegation as to negligence.

The material facts, as shown by the testimony, are as follows: Young Cathey was a minor. He was employed by the defendant, and his duties were those of night switchman in the Canton yard, with which he was familiar. He helped to make up the trains there. About the twentieth of May, 1890, at night, a freight-train was being made up in the yard. Cathey was directed to make the coupling of a coal-car. This he did; but, in doing so, he either fell or was knocked down and injured. The wheels passed over his right leg and left foot. From the injuries received, he died the next morning. No one was near enough to be able

to say just how the accident occurred or what caused it. Some of the witnesses testified to having seen him fall, and others heard him cry out; the lantern he had in his hand was seen to go up and then fall suddenly. When he was reached he was lying on his back, with his body outside the track and his legs under the car. He stated to the attending physician that "he fell down between the cars." The injury occurred on a switch or side-track, and plaintiff introduced evidence of various defects about the track, namely: That the rails where the deceased fell were laminated so that iron splinters stuck out from them the size and length of a man's finger, and strong enough to trip a man; that the ties were rotten, and that there was a depression in the track, which caused it to give way several inches as the train passed over; that there were lumps of coal scattered about on the ground between the rails, some of them "as large as a man's two fists," and over which one would be likely to stumble. There was also testimony tending to show there were blood spots near the rail; and it was shown that the left leg of the pants which deceased had on was freshly snagged and torn near the bottom, and on the inside of, and parallel with, the rail at this point there was a man's track. It was shown that one always goes in sidewise to couple cars. There was also evidence tending to show that, before the injury, the attention of the yard-master and road-master of defendant had been called to the defective and dangerous condition of the track at that place. After the injury, the rail at the place where deceased was run over was taken up and replaced with another. The rail which was taken up was not produced at the trial. There were some conflicts in the testimony; but, in view of the opinion of the court, it is not deemed necessary to specify the same, or to set out the evidence more fully.

Plaintiff's second instruction, alluded to in the opinion, is as follows:

" The court charges the jury that, if they believe from the

evidence that the road-bed and rail of defendant company at the point of injury was dangerous, and out of repair, and the railroad company was guilty of gross negligence in permitting its road-bed, rails and track to be out of repair, and that the condition of the rails was dangerous at the point of injury, and that these facts were brought to the notice of the railroad company before the accident, and that the company failed to repair its rails and road-bed, and that the death of Cathey was the result of such gross negligence of the company in not repairing its rail and track, and that Cathey was not guilty of contributory negligence, then the jury should find for the plaintiff, and assess his damages at such amount as they may believe from the evidence he is entitled to."

The jury found a verdict in favor of plaintiff for $9,000, and judgment was entered thereon. Motion for new trial overruled. Defendant appeals. The opinion contains a further statement of the case.

*Mayes & Harris*, for appellant,

1. Discussed the facts at length, contending that there was no proof that the injury complained of was caused by defendant's negligence; that the theory of the deceased being injured by reason of the causes alluded to in the evidence, was based upon pure conjecture, and that, as there was no proof of a causal relation between the injury and the alleged negligence, the verdict was wholly unsupported, and there should have been a peremptory instruction to find for the defendant, citing *Short* v. *Railroad Co.*, 69 Miss., 848.

2. Granting, for the purpose of argument, that the deceased was killed by reason of defendant's negligence in respect to the things mentioned in the testimony, still it was a proper cause for a peremptory instruction. It was the duty of the yard-master and section-boss to keep the track in order, and these parties were fellow-servants with the deceased. *Lagrone* v. *Railroad Co.*, 67 Miss., 592. The acci-

dent occurred in May, 1890, hence, the provisions of the new constitution as to this have no application.

3. Plaintiff's second instruction should not have been given. It lays down a rule of recovery which is at variance with the pleadings. The declaration puts the case on wilful and wanton negligence in running cars, while the evidence and this instruction put it wholly on a different ground— that is, in not keeping the track in order. On this point, see authorities referred to in George's Miss. Dig., p. 423, § 54. The instruction is also erroneous in charging that, if the jury found for plaintiff, they "might assess his damages at such amount as they may believe from the evidence he is entitled to." The court should have fixed the elements of damages to be considered. This was not an action under § 1510 of the code, for the death of the deceased; and his death is not an element in the computation. *Railroad Co.* v. *Phillips*, 64 Miss., 693.

*A. H. Whitfield*, for appellee,

Filed a lengthy brief, contending substantially as follows:

1. The conclusion reached by the jury, and properly, from the evidence, was that Cathey went in sidewise to make the coupling, and made it, turned, was caught by the spurs, and fell, and, in falling, threw himself backwards on the ground; that the spurs caught the left leg of his pants near the bottom, and, holding, threw him; or, else, that he stumbled over coal shown to have been there. The first proposition is the more probable one, and it is manifestly what occurred. Is it possible that the finding of the jury on this pure, unmixed question of fact is to be disturbed by the court?

2. The case is entirely different from *Short* v. *Railroad Co.*, 69 Miss. There it was shown that the track was in good condition; here the track was out of repair, and dangerous in the extreme. Counsel's whole argument means that "causal relation" can never be made out by circumstantial evidence.

3. It is an astounding proposition that this case is governed

by the decision in *Lagrone* v. *Railroad Co.*, 67 Miss., 592. This is a case of defective machinery and defective road-bed, and is within the exception of the fellow-servant doctrine.

4. The objection to the second instruction is hardly serious. There is no countenance for the proposition that the damages claimed were for the death and punitory.

5. Other cases decided by this court hold that the company is liable in a case like this, where the track is unsafe and the rails and cross-ties worn out. It was so held in *Hughes' Case*, and in the case of *McMaster* v. *Railroad Co.*, 65 Miss., 264. And in the recent unreported case of the *I. C. R. R. Co.* v. *Ruffin*, the fellow-servant doctrine was held no defense. As to the fellow-servant doctrine, I refer the court to the accurate language of Judge Dillon, in 24 Am. L. Review, p. 190, quoted in 11 Lawyers' An. Rep., 76.

The true inquiry is, was the accident one of a normal and natural risk in the ordinary course of business? If the railroad company will have an unsafe track, splintered and worn out rails and cross-ties, it is most emphatically not a normal or natural risk.

CAMPBELL, C. J., delivered the opinion of the court.

The recovery in this case was for an injury suffered before the constitution of 1890, and the law then in force governs. By it, the defendant *prima facie* was not liable to its employe for an injury suffered in the service for which he was employed. The gist of the action is negligence of the employer, by failure in duty to the employe, and that the injury resulted from this negligence. It is not enough that negligence of the employer and injury to the employe co-existed, but the injury must have been *caused by* the negligence; and the fact that injury to an employe occurred after the negligence is not sufficient to show the relation of cause and effect between them. *Post hoc ergo propter hoc* is not sound as evidence or argument. Nor is it sufficient for a plaintiff, seeking recovery for alleged negligence by an employer towards an em-

ploye, to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation.

There was a fatal variance between the declaration and the evidence in this case, but no objection was made on that ground, and, as an amendment would have been allowable so as to conform the pleading to the evidence, if this objection had been made, it must be held to have been waived, and cannot be made available here now.

The second instruction for the plaintiff is subject to the criticism that its mention of the *death* of Cathey, as a result of the accident, may have caused the jury to suppose that the death was an element of damage to be estimated by it. But this might not cause a reversal in a case where the evidence showed satisfactorily the right of the plaintiff to recover. Such is not the state of this case. The evidence of the plaintiff is wholly insufficient to establish any necessary or even probable connection between the negligence of the defendant, testified of by the witnesses for the plaintiff, and the hurt of Cathey. He may have suffered his injury as the result of the things spoken of, but no man can say that he did, or that it is probable he did. His business was a perilous one, in which the most experienced and cautious are liable, under the most favorable conditions, to suffer injury, and meet death, which lurks in a thousand forms, and claims its victims when least expected oftentimes. It is just as probable, from the evidence, that Cathey fell from some one of the many causes that might have caused it, as that he stumbled over the coal or uneven rails or from his pants being caught on a piece of the rail, which was said to project from it at right-angles, which latter is said by counsel to have been the most probable cause of his fall. All is pure guessing, the merest conjecture, as to how the accident was produced, and the evidence for the plaintiff fails to do more than to suggest several ways in which it might have occurred; but what caused it is unknown, ex-

cept as indicated by what the unfortunate young man said—
i. e., "He fell down between the cars, and the wheels passed
over" him. That much is known, and no more can be af-
firmed, with confidence, as a fact, or as a reasonable proba-
bility from human experience in tracing consequence to
cause by the light of the evidence produced by plaintiff, on
which we have considered the case, without regard to the
testimony for the defendant, which, if believed, completely
disproves the case made by the plaintiff's witnesses. They
differ among themselves materially, and one might well hes-
itate to conclude that the truth is discoverable from their tes-
timony as to where the sad mishap took place, and whether
precisely at that point there was either coal or splinters from
the rail, or depression or unevenness of track, or any other
defect, on which to lay the blame of the deplorable misfort-
une of young Cathey on that fatal night, when, in the per-
formance of duty in the perilous service in which he was
engaged, he received a mortal hurt. But we have considered
the case as if all was proved which the plaintiff's evidence,
accepted as true, tends to prove, and, thus viewed, there is a
wide chasm between the matters referred to as the cause of
the hurt and the injury received. This chasm has no bridge
but conjecture, which is insufficient to maintain a jury in
crossing to a verdict in any case. It must, therefore, have
been *leaped* by the jury, moved by sympathy for the dead
son and the living, sorrowing father, and incited by the elo-
quence of counsel dealing with so pathetic a theme. We
maintain inviolate the right of trial by jury, and scrupu-
lously preserve the line that marks the distinction between
the functions of court and jury, and adhere to the rule that
where the verdict is supported by evidence sufficient to main-
tain it, it should not be disturbed by the appellate court be-
cause it takes a different view of the evidence from that held
by the jury, and would have given a different verdict, but
where, as in this case, after the most careful consideration
by us of all the evidence for the plaintiff, giving it all

full credit, we cannot discover any probable connection be-
tween the negligence narrated and the injury suffered by
Cathey, our duty is to set aside the verdict, which is accord-
ingly done.

*Reversed and remanded.*