## Tombigbee Electric Power Ass'n. *v.* Gandy.

Feb. 2, 1953

No. 38492 18 Adv. S. 40 62 So. 2d 567

*James A. Finley* and *W. C. Sweat* and *W. C. Sweat, Jr.,* for appellant.

446

*Cunningham & Cunningham,* for appellee.

HALL, J.

Appellee owned a farm and store at Plantersville, Mississippi, and in February, 1947, obtained electric service from appellant for his store. Appellant owned and operated a main line and from this main line it ran a service line across appellee's land to his store. This

service line was on poles which extended twenty-nine feet above the ground. It first consisted of two wires, one of which was attached to the poles six inches from the top and the other was attached to the poles eighteen inches below the top wire and carries 110 volts of electricity. In April, 1947, a third wire, carrying 110 volts, was attached to the poles at a point eighteen inches below the second wire, and these wires all led to appellee's store. All these wires were new when installed and were covered with standard insulation, and there is no complaint as to the method and manner of installation. On June 4, 1947, appellee leased a part of his land to Southland Oils for the purpose of erecting thereon bulk storage facilities for the operation of a bulk gasoline and petroleum products business, and on the same date Southland Oils leased the same property back to appellee under an agreement whereby Southland Oils obligated itself, within a period of four months, to establish and erect a bulk oil storage plant thereon for the storing of regular gasoline, Ethyl gasoline, tractor fuel and kerosene, together with a warehouse for the storage of lubricating oils in barrels and cases and for storage of greases in packages and drums, and for storage of tires, batteries and accessories, and, in short, it was agreed that appellee would operate the bulk station for the sale of said products at wholesale.

Pursuant to these agreements Southland Oils entered upon appellee's land and installed the facilities mentioned. They were placed exactly where appellee directed, and one of the gasoline storage tanks was placed directly underneath the service wires which ran to appellee's store. On May 1, 1948, appellee purchased all of said storage facilities from Southland Oils and continued to operate the bulk station plant until the same, together with the store and stock of merchandise, was destroyed by fire and explosion on October 6, 1948.

On June 28, 1951, appellee brought suit for the recovery of damages for his said loss, alleging that the storage tank was erected in close and dangerous proximity to the electric service wires, that appellant knew of the dangerous situation, and that it was guilty of negligence proximately contributing to the loss by continuing to pass its current of electricity through the said wires to his store building. Upon a trial of the cause thus presented appellee recovered a judgment, upon a verdict of a jury, in the amount of $17,500.00 from which this appeal is prosecuted. Numerous errors are assigned but in view of the conclusion which we have reached it is necessary that we consider only that one which is directed at the action of the trial court in refusing a peremptory instruction for appellant.

The evidence for appellee is to the effect that on the storage tank underneath the wires there was a vent pipe which turned downward and that the lower wire was, according to two witnesses, from three to five inches therefrom, and according to another witness from eight to ten inches therefrom. The evidence shows without dispute that the wires were new when installed and were properly insulated and that this insulation would ordinarily be effective for a period of from ten to fifteen years. The evidence further shows that no spark can emanate from any of the wires so as to ignite the gasoline vapors from the tank or vent pipe unless the insulation is removed from the wire and unless it comes in contact either with another wire from which the insulation is removed or with the vent pipe or metal tank. One of appellee's employees, who went daily upon the tanks to measure by gauge the amount of gasoline therein, testified in his behalf and frankly stated that he had never noticed anything wrong with the wires. There is not one word of evidence in the record showing that the insulation had been removed from any of the wires nor that any of the wires had ever come in contact with each

other or with the tank or vent pipe or any other object. Appellee bases his right to recover upon the theory that the wire might have come in contact with the tank or pipe and that by swaying in the wind the insulation might have been thereby rubbed off and that a spark might have been caused by such contact and might have ignited the gasoline vapor coming from the vent pipe, and might have thereby caused an explosion with the resulting fire. There is no proof whatever of the happening of any of said possibilities. There is proof in the record that gasoline fumes might cause the insulation to deteriorate, but there is no testimony that such a thing did in fact occur.

As against the mentioned possibilities appellant produced the testimony of Mr. R. H. Park who lived about one-tenth of a mile from the storage tanks and of his son who lived about one thousand feet from the tanks. Mr. Park testified that he had not retired for the night when he observed a fire on the ground in front of the tanks; there had been no explosion at that time; he went to the home of his son and awakened him and the son arose and also observed the fire on the ground; the son dressed and the two of them approached the fire but, sensing the likelihood of an explosion, they were afraid to go near the fire and stopped at a barn. When they reached the barn the fire was then burning the wooden platform about the tanks, and subsequent to that the explosion occurred. The son, Bill Park, testified to the same effect, and none of this testimony is disputed in any particular, nor was either of these witnesses impeached in any manner. The first that any of appellee's witnesses knew of the fire was when the explosion occurred; they knew nothing as to what occurred before the explosion.

Appellee introduced in evidence the National Electric Code published by the National Board of Fire Underwriters wherein it is provided that where service lines do not carry more than 300 volts of electricity there should be a

clearance of not less than three feet between them and any roof, and we may assume for the purposes of this opinion that it was dangerous for appellant to pass electricity through its wires under the conditions above mentioned and that it was negligent in so doing even though we have repeatedly held that danger alone does not constitute negligence. Campbell v. Willard, 205 Miss. 783, 39 So. 2d 483. But even where negligence is shown that fact alone affords no basis for the recovery of damages unless it further appears from direct evidence or reasonable inference that such negligence proximately contributed to the damage. And when appellee must resort to inference, as he does in this case, we are confronted with the rule adopted by this Court that inferences may not be pyramided beyond the bounds of legitimate conclusion in showing that negligence was a factor proximately contributing to the damage. Here we are asked to infer that in some manner, either by contact with gasoline vapors or by rubbing against the tank or vent pipe, the insulation on the wire deteriorated to such extent as to expose the wire, notwithstanding the fact that there is not one word of testimony that either of such conditions existed. Then we are asked to infer that the wire thus exposed came in contact either with another wire which was likewise exposed or with the tank or vent pipe, when there is no evidence to support such an inference. Then we are asked to infer that such contact caused a spark, when there is nothing to support this inference. And finally we are asked to infer that such spark caused the ignition of gasoline vapors emanating from the vent pipe and caused an explosion, when the positive proof is that the fire had been burning on the ground in front of the tanks for some time before the explosion occurred. The application of such a chain of inferences was condemned by this Court in Masonite Corporation v. Hill, 170 Miss. 158, 166-167, 154 So. 295, 95 A. L. R. 157, wherein we said:

"But the great weight of opinion, from so many of the able courts of the country, to the effect that an inference essential to the establishment of the cause of action may not be based upon another inference, admonishes us, first, that, in declining to recognize that rule, so stated, in this jurisdiction, we must, in allowing inference upon inference, do so with the firm limitation that the probabilities thereby permitted to be entertained are safe and dependable probabilities, measured by legal standards, for they involve more than the simple and generally unimportant affairs of everyday life; they involve in court procedure the liberty and property of others. Obviously every inference drawn from another inference produces a result wherein the quality of probability becomes weaker and soon or later a stage is reached when serious doubt arises whether, under legal standards, the ultimate inference in the chain of inferences is a legally safe and dependable probability or has become only a more or less strong possibility, and, when that stage is reached, the proof is insufficient, so far as concerns judgments at law.

"The second admonition is that, in allowing inference upon inference, we should do so no further than the reasonable necessities of the case, in the interest of justice, require. Fortunately, in nearly all cases, particularly in civil cases, the necessities of the case do not require that the chain of inferences shall be lengthened, one link to another, through such an extent as to present as a practical question the problem whether the chain of inferences has become too long and therefore too weak to hold; for in nearly every case it will be found that one or more of the essential facts sought to be established by inference is or are capable of proof by direct, positive, or by demonstrative evidence, and thereupon there comes into play the rule that, where a party, who has the burden of proof, has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, he must introduce that more ex-

plicit, direct, and satisfactory proof, or else suffer the presumption that, if the more satisfactory evidence had been given, it would have been detrimental to him and would have laid open deficiencies in, and objections to, his case, which the more obscure and uncertain evidence did not disclose. 22 C. J. p. 115; 23 C. J. p. 40; 10 R. C. L. p. 885; 9 Ency. Ev. pp. 959, 960; 1 Jones, Com. Ev. (2 Ed.), pp. 185, 186; Wigmore, Ev. (2 Ed.), p. 585; Clifton v. United States, 4 How. 242, 11 L. Ed. 957.''

Appellee's whole case is bottomed upon the charge that there was an explosion which created or caused the fire with its resulting damage. As to this charge we revert to the testimony of Mr. R. H. Park and his son to the effect that the fire was burning on the ground in front of the tanks long before there was an explosion. That evidence is undisputed and neither of these witnesses was impeached in any manner. Upon their testimony appellee's case must fail. We have repeatedly held that ▮▮ where the testimony of a witness is uncontradicted and he is not impeached in some manner known to the law and is not contradicted by the physical facts and circumstances it must be accepted as true. Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653; Wilson v. Blanton, 130 Miss. 390, 94 So. 214; Ryals v. Douglas, 205 Miss. 695, 39 So. 2d 311.

▮▮ We are fully mindful of the rule that negligence may be established by circumstantial evidence and that the causal connection between an agency and the injury need not be shown by direct evidence, but this rule is qualified to the extent that the circumstances shown must be such as to take the case out of the realm of conjecture and place it within the field of legitimate inference. 38 Am. Jur. p. 1032, Negligence, Section 333; Johnston v. Canton Flying Services, 209 Miss. 226, 46 So. 2d 533. To sustain appellee's case here we have nothing but the wildest form of conjecture, and there is no legitimate inference under anything shown by the record that an explosion was caused by electricity from appellant's service line which

created the resulting fire. On the contrary, the record is clear that the explosion was caused by the fire. There is no more reason to support a finding that this fire was caused by a spark of electricity than there is to say that it was caused from the act of some vandal or by the act of some thief stealing gasoline who carelessly permitted it to be ignited by a match or a lighted cigarette.

The record here shows nothing more, at best, than a remote possibility as to the origin of the fire and that possibility is written out of the picture by the testimony of Park and his son. But even in the absence of that testimony we still have nothing left but a bare possibility and we are faced with the rule so often declared by this Court that ██ ██ verdicts must rest upon reasonable probabilities and not upon mere possibilities, and the probabilities must be such as to show not only negligence but that such negligence was a proximate contributing cause of the damage.

In the case of Illinois Central Railroad Company v. Cathy, 70 Miss. 332, 12 So. 253, Chief Justice Campbell said: ''Possibilities will not sustain a verdict. It must have a better foundation. . . . But we have considered the case as if all was proved which the plaintiff's evidence, accepted as true, tends to prove; and, thus viewed, there is a wide chasm between the matters referred to as the cause of the hurt, and the injury received. This chasm has no bridge but conjecture, which is insufficient to maintain a jury in crossing to a verdict in any case. . . . We maintain inviolate the right of trial by jury, and scrupulously preserve the line that marks the distinction between the functions of court and jury, and adhere to the rule that, where the verdict is supported by evidence sufficient to maintain it, it should not be disturbed by the appellate court because it takes a different view of the evidence from that held by the jury and would have given a different verdict; but where, as in this case, after the most careful consideration by us of all the evidence for

the plaintiff, giving it full credit, we cannot discover any probable connection between the negligence alleged and the injury suffered by Cathy, our duty is to set aside the verdict, which is accordingly done.''

The Cathy case was cited with approval in Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625, wherein Judge Griffith, speaking for the Court, said: ''It is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence. *Post hoc ergo propter hoc* is not sound as evidence or argument. Nor is it'sufficient for a plaintiff, seeking recovery for alleged negligence by another toward the plaintiff, to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation.'' This terse and pointed statement of the law is so firmly established by so many of our decisions that a quotation from all of them would consume probably half a volume of our reports. Some of those which support it' are as follows: Columbus & Greenville Railroad Company v. Coleman, 172 Miss. 514, 160 So. 277; Equitable Life Insurance Society v. Mitchell, 201 Miss. 696, 29 So. 2d 88; Illinois Central R. R. Company v. Bloodworth, 166 Miss. 602, 145 So. 333; Yazoo & Mississippi Valley Railroad Company v. Lamensdorf, 180 Miss. 426, 178 So. 80; Berryhill v. Nichols, 171 Miss. 769, 158 So. 470; New Orleans & Northeastern Railroad Company v. Holsomback, 168 Miss. 493, 151 So. 720; Williams v. Lumpkin, 169 Miss. 146, 152 So. 842; Burnside v. Gulf Refining Company, 166 Miss. 460, 148 So. 219; Jabron v. State, 172 Miss. 135, 159 So. 406; Serio v. Illinois Central Railroad Company, 54 So. 2d 481, not reported in the State Reports.

Reluctant as we are to disturb the verdict of the jury we cannot close our eyes to the well-established principle that verdicts must rest upon reasonable probabilities and not upon mere possibilities. Since no reasonable proba-

bility appears in this case it is our conclusion that the peremptory instruction requested by appellant should have been granted and the judgment of the lower court will accordingly be reversed and judgment will be here entered in favor of appellant.

Reversed and judgment here.

*McGehee, C. J.* and *Roberds, Kyle, Holmes, Arrington, Ethridge* and *Lotterhos, JJ.,* concur. *Lee, J.,* took no part.