WELBORN *v.* JOE N. MILES & SONS LUMBER CO., et al.

No. 40560            November 4, 1957        97 So. 2d 734

*Carl C. Welborn,* Hattiesburg, for appellant.

*M. M. Roberts,* Hattiesburg, for appellee.

HALL, J.

On November 6, 1952, the appellant, while in the employ of the Lumber Company and while engaged in stacking lumber on the lumber yard was struck above the right ear by a piece of lumber which was being transported by other employees on a lumber lift and was knocked unconscious. He was carried to Dr. C. C. Jaubert at his clinic in Lumberton and was kept in the clinic until about 5 P. M. when it closed for the day. He was then carried to his home and two or three days later was released by Dr. Jaubert to return to his work. There is no question about the appellant being struck and that the accident arose out of and in the scope of his employment. He returned to work on November 12, 1952, and continued in his regular employment until April 29, 1953, when he quit his employment and went to his father's home in Covington County and went to work on the farm. At that time he admits that his conditon was perfectly normal.

On August 12, 1953, he returned to the Lumber Company and applied for employment and was accepted and went back to his work at the lumber mill and continued in the discharge of his regular duties until November 18, 1953. During all of which time he admits that he had no physical trouble. On the last named date he resigned from his job with the Lumber Company and went back to his father's farm and did all kinds of work, such as plowing, hoeing and thinning corn, and attending to cotton. He admits that he was not physically handicapped at that time.

In the fall of 1954 he went to Dr. Barnes in Mt. Olive and complained of pain in his arm and neck and shoulders. He says that this was the first time he ever noticed that anything was wrong with his arm or neck. Dr. Barnes did not make a thorough physical examination but gave him some kind of medicine to ease the pain and he went back to the farm and finally on May 1, 1955, he went to Dr. D. P. Smith at Collins, who gave him a thorough examination and who testified that among other things he found a spinal condition which he diagnosed as a herniated disc. Dr. Smith testified by deposition that "it is possible that this could have occurred" as a result of the blow on the head on November 6, 1952. He was asked whether this condition was probably caused by being struck on the head by a piece of lumber in November 1952, and he replied "That is very difficult to answer. I will say that it is possible that this injury could have caused this condition although it is also possible that this could be caused by some unknown origin". He was asked whether the condition he found could be brought about in any way other than receiving the blow on the head, and he replied "that is possible". Dr. Smith never did testify that in his opinion the condition he found was the result of the blow on the head about two and a half years previously, and the most that he said was that it was a mere possibility. According to the doctor's testimony

the claimant gave him a history of having had some disability six or eight months after the injury, but the claimant in his testimony said that he had never had any trouble after the injury until he got the medicine from Dr. Barnes.

Dr. Charles L. Neill examined the claimant at the instance of the carrier. His was a neurological examination and he testified that claimant has some loss of the use of his right arm, but that his principal trouble was high blood pressure and a heart trouble. He said that claimant's condition was not related to his injury and that there was no connection between the accident in 1952 and the complaints and findings at the time of his examination in 1956. He testified that his X-ray findings are suggestive of degenerated intervertebral disc disease and he said that such degenerative changes could be the result of a blow on the head, but that such findings by X-ray are very common in patients of the claimant's age group, and that his clinical examination did not substantiate any evidence of nerve root involvment or spinal cord involvment. He said that he thought that claimant is a sick man and that he is capable of some light work but he would not like to see a patient with his cardiac and hypertension status engage in any type of heavy labor activity. He also said that there is no cause or relationship between his injury and his present disabilities. After the depositions had been filed claimant's attorney requested the privilege of taking the testimony of Dr. Francis R. Conn, an orthopedic surgeon of Hattiesburg, but on April 25, 1956, the attorney wrote a letter to the attorney-referee and withdrew his request. Dr. Conn had examined the claimant at the instance of the carrier.

On October 24, 1955, counsel for appellees filed a plea challenging the jurisdiction of the commission. This was based on Section 6998-27 of the Recompiled Code of 1942, being Section 21 of the compensation act. In this case

the claimant did not lose as much as a week's time from his work and hence under the law no compensation was paid. The said section of the Code provides that the commission on its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact may at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case and issue a new compensation order which may terminate, continue, re-instate, increase or decrease such compensation or award compensation. The attorney-referee and the commission did not pass upon this motion but while the case was still pending and on December 9, 1955, counsel for appellees filed a plea in bar under Section 6998-18 of the Recompiled Code of 1942, which is Section 12 of the compensation act, the pertinent part of which section provides that regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right of compensation therefor shall be barred.

The attorney-referee entered an opinion finding that the claimant was in the employ of the company at an average weekly wage of $30 and that on November 6, 1952, he sustained an accidential injury which arose out of and in the scope and course of his employment and on account of which he lost not more than five days employment and that no claim for compensation or action for benefits was filed within two years from the date of the injury. He found that there is no substantial evidence upon which to base a finding that the present condition of complainant is the result of the injury sustained on

November 6, 1952, and he sustained the motion to dismiss the claim under Section 12 of the compensation law.

The claimant appealed to the full commission, which body unanimously affirmed the award of the attorney-referee and thereafter the claimant appealed to the circuit court of Lamar County, which court affirmed the order of the commission and the claimant appealed here.

Appellant contends that the plea of limitation under Section 12 of the Act should not have been sustained for the reason that, notwithstanding the fact that the company was given no notice of the claim until two and one-half years after the accident, our statute does not begin to run until the claimant as a reasonable man should recognize that he has an injury or, in other words, until disability, resulting from the accident, manifests itself to the employee.

Appellant also contends that there is substantial evidence that appellant sustained an accidental injury while within the scope and course of his employment for which he is entitled to compensation. Notwithstanding the appellant's positive testimony repeatedly given that he suffered no disability to his knowledge until two days before he gave notice in May 1955, which is in direct conflict with what both doctors say he told them, we pass over that feature and go directly to the second question raised by appellant. As we have pointed out, neither doctor who testified gave any opinion that the appellant's disability was probably caused by the accident of November 6, 1952. The most that either one of them would say was that there is a possibility of a casual connection between the accident and the appellant's condition. In the case of Equitable Life Assurance Society of U. S. v. Mitchell, 201 Miss. 696 (720), 29 So. 2d 88, we said that at most the evidence for the appellee in that case amounted only to a conjecture or possibility and we quoted with approval from Columbus & Greenville Railway Co. v. Coleman, 172 Miss. 514, 160 So. 277 (279), to the effect

that "courts in civil cases act upon reasonable probabilities".

In the case of Tombigbee Electric Power Assn. v. Gandy, 216 Miss. 444, (455-6), 62 So. 2d 567, we cited several authorities to the effect that mere possibilities are not sufficient to support an award in a negligence case and that probabilities must be such as to show not only negligence but that such negligence was a proximate contributing cause of the damage. Among other cases cited is Illinois Central R. R. Co. v. Cathy, 70 Miss. 332, 12 So. 253, wherein Chief Justice Campbell said, "Possibilities will not sustain a verdict. It must have a better foundation." We also cited Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625, wherein Judge Griffith, speaking for the Court, said that possibilities will not sustain a verdict. Numerous other cases are cited in the Gandy case to the same effect.

In the recent case of Halbert v. Lamar Advertising Agency, et al, 95 So. 2d 535 (537), we pointed out that in compensation cases where the decision of the attorney-referee and the findings of the commission and the decision of the circuit court are supported by substantial evidence and are not manifestly wrong as being against the weight of the evidence, we will not disturb the finding.

In the case of Smith v. St. Catherine Gravel Co., 220 Miss. 462 (470), 71 So. 2d 221, we said, "Of course the burden was upon claimants to establish the fact that Mr. Smith's death resulted from the injury he received while an employee of the gravel company, or, at least, to show that such injury was a substantially contributing cause."

In view of what we have said it is our opinion that the judgment of the circuit court affirming the order of the commission and of the attorney-referee should be affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.