774 So.2d 459 (2000)
HANKINS LUMBER COMPANY, Appellant,
v.
Charles MOORE, Appellee.
No. 1999-CA-00322-COA.
Court of Appeals of Mississippi.
July 18, 2000.
Rehearing Denied October 3, 2000.
Certiorari Denied December 29, 2000.
*461 Thomas Henry Freeland IV, Oxford, Attorney for Appellant.
Robert J. Dambrino III, Grenada, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
LEE, J., for the Court:
¶ 1. The appellant, Hankins Lumber Company, appeals from the Circuit Court of Grenada County an $80,000 jury verdict which apportioned 70% of the damages to it for injuries sustained by the appellee, Charles Moore, when part of a load of lumber being transported for Hankins Lumber by Carl Morris fell from Morris's truck. The jury apportioned 30% of the damages to Morris. Finding no reversible error, we affirm the judgment of the lower court.

FACTS
¶ 2. On Friday, October 1, 1993 Carl Morris was traveling on a Grenada County highway in his flatbed truck which was loaded with thirteen bundles of lumber, each bundle containing 96 boards measuring 2 × 8 × 14 feet long. A board from Morris's load hit the hood of Charles Moore's pickup truck as he passed it headed in the opposite direction and shattered the windshield. Though the board itself did not hit Moore, he sustained cuts to his face and neck and later complained of back pain. Moore claimed $7,156.03 in medical *462 expenses and $1,600 in damage to his truck as a result of the accident.
¶ 3. At the time of the accident Morris was a partner in Black Magic Trucking Company and had contracted with Hankins Lumber to haul a load of lumber from its sawmill in Sturgis to Ashburn, Georgia. It was the responsibility of Hankins Lumber to secure the bundles of lumber together and load them on to Morris's truck. In so doing it utilized a manual bander and placed two steel bands on every bundle, one band on each end of each bundle, and loaded the bundles to the truck with a forklift. It was Morris's responsibility to then secure the banded bundles to his truck utilizing nylon straps. After so doing, Morris then left the lumberyard and, after pulling over just outside the Sturgis city limits for the customary rechecking of his load, proceeded for his destination. Morris chose a circuitous route via his hometown of Holcomb, where he intended to spend the night prior to the delivery of his load on Monday in Ashburn, Georgia.
¶ 4. Morris testified that when he was just outside of Winona he stopped for a school bus and lumber shifted and came out of the top bundle. He stopped and picked it up with the help of two people that he hired. As he continued on to Elliott he noticed that the boards were "walking" back out of the bundle, and he decided to stop at nearby Morgan's Grocery to call the Elliott facility of Hankins Lumber which was less than a half mile away. By this time it was almost 5:00 p.m. on Friday afternoon. Morris said that he wanted the load rebanded, that he told James Jones at the Elliott facility that the bands were loose and that "one had slid off." Morris said that Jones told him to tie the load down and ease on. Jones, on the other hand, testified he told Morris to restack and restrap the lumber and then to move on. Jones said he told Morris that if he wanted his load rebanded that he needed to go back to Sturgis, which was 40-50 miles away, since that is where he loaded. Jones acknowledged that the Elliott facility had the necessary banding apparatus for rebanding Morris's load. Morris said that when Jones would not reband the load, he pushed the boards back and tightened his straps prior to continuing his journey. Two miles down the road 20-25 boards came out of the middle of the top bundle, one of which hit Moore's truck.
¶ 5. Jones testified that he was aware of bundles having come apart or "telescoping" from the middle of a bundle when the truck transporting the lumber had come to a quick stop or "broke fast". He said the bundle would shift and lumber from the middle would slide out. On those occasions Jones had in the past gone out to help the truck driver pick up the lumber and restack it, but the lumber was not rebanded. The testimony of Bill Peden, safety director for Hankins, disclosed that Hankins Lumber had in the past rebanded off-site where bands had come off of lumber on a railroad car. He said that Hankins could not have rebanded Morris's load because Hankins's insurance policy did not provide coverage for employees injured while physically working on another's truck.
¶ 6. Morris testified that neither band was on the top bundle when he got to Moore. Mr. Peden testified that as a general rule, bundles under 12 feet long are banded with two bands and bundles over twelve feet long are banded with three steel bands, one band on each end and one in the middle. Morris said that newly cut lumber is slick and must be banded tightly in order to be properly secured. He testified that the bands did not break but slid off because they were not banded tightly. He also said that the purpose of the bands is to hold the bundle together and that the purpose of the straps is to hold the load to the trailer. It was his absolute opinion that the problem was in the banding, not the strapping.
¶ 7. Peden said that the amount of tension on the bands depends on the amount of tension applied by the person banding, *463 that there is no standard for tension. He also stated that the purpose of the banding is to facilitate the movement of the bundles around the yard, not to keep individual pieces of lumber from falling out of the bundle. According to Peden, there is no physical inspection for tightness; however, the bundles are visibly inspected by the forklift driver and if the bundles are not properly banded, they cannot be moved with a forklift without falling apart. On a typical bundle the steel bands are tight enough to prevent sliding up and down and may actually cause indentions into the lumber.'

ISSUE AND DISCUSSION

DID THE TRIAL COURT ERR IN FAILING TO GRANT HANKINS LUMBER A JNOV OR, IN THE ALTERNATIVE, A NEW TRIAL?

Standard of Review
¶ 8. The standard of review for determining whether a trial court should have granted a JNOV is enunciated in Jesco, Inc. v. Whitehead, 451 So.2d 706, 714 (Miss.1984) (Robertson, J., specially concurring):
The motion for j.n.o.v. tests the legal sufficiency of the evidence supporting the verdict. It asks the Court to hold, as a matter of law, that the verdict may not stand. Where a motion for j.n.o.v. has been made, the trial court must consider all of the evidencenot just evidence which supports the non-movant's casein the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand. See, e.g., General Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss.1969); Paymaster Oil [Mill] Co. v. Mitchell, 319 So.2d 652, 657 (Miss.1975); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss.1983).
Jesco, Inc., 451 So.2d at 714. We are thus bound to review the evidence in the light most favorable to Moore, the non-moving party, who maintains that the evidence was sufficient to support the verdict which apportioned 70% for Moore's injury to Hankins Lumber.
¶ 9. A review of the record and trial transcript shows that there is substantial evidence of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions regarding the negligence of Hankins Lumber. In addition, Moore, the non-movant, must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. We do not find that these facts and inferences so considered point so overwhelmingly in favor of Hankins Lumber that reasonable men could not have arrived at a contrary verdict, thereby requiring that the motion must be granted, Jesco, Inc., 451 So.2d at 714, and therefore find that the motion was properly denied.
¶ 10. We recognize that a motion for a new trial may be proper in circumstances where a JNOV should not have been granted. Larkin v. Perry, 427 So.2d 138, 138-39 (Miss.1983). A trial judge should order a new trial only when he is convinced that the verdict is contrary to the substantial weight of the evidence. Adams v. Green, 474 So.2d 577, 582 (Miss. 1985). The standard for reviewing the action of a trial court in the granting or refusing of a new trial was set out in the case of Dorr v. Watson, 28 Miss. 383 (1854). That case states that though it is *464 within the sound discretion of the court below whether to grant a new trial, if a new trial is refused it may be reversed when the denial of the motion is manifestly wrong. Id. at 395. In reviewing the evidence presented at the trial in this case, we cannot say that the verdict was against the substantial weight of the evidence and therefore cannot find that the denial of the motion for a new trial was manifest error.

Negligence & Questions of Fact
¶ 11. When reasonable minds might differ on the matter, questions of proximate cause and of negligence and of contributory negligence are generally for determination of jury. American Creosote Works of Louisiana v. Harp, 215 Miss. 5, 12, 60 So.2d 514, 517 (1952). These questions are for the jury to decide under proper instructions of the court as to the applicable principles of law involved. Smith v. Walton, 271 So.2d 409, 413 (Miss. 1973). Foreseeability and breach of duty are also issues to be decided by the finder of fact once sufficient evidence is presented in a negligence case. American Nat. Ins. Co. v. Hogue, 749 So.2d 1254, 1259 (Miss.Ct.App.2000).
¶ 12. Hankins Lumber argues that the proximate cause of the accident was Morris's failure to restack the lumber once he knew that his load was unstable. The standard of care applicable in cases of alleged negligent conduct is whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances. If a defendant's conduct is reasonable in light of the foreseeable risks, there is no negligence and no liability. A defendant must only take reasonable measures to remove or protect against foreseeable hazards that he knows about or should know about in the exercise of due care. Donald v. Amoco Prod. Co., 735 So.2d 161, 174 (Miss.1999).
¶ 13. It is a question of fact for the jury to determine whether Hankins Lumber acted reasonably under the circumstances to protect against a foreseeable hazard after Morris called the Hankins Lumber facility in Elliott from Morgan's Grocery. Additionally, it is for the jury to determine if the conduct of Hankins Lumber at that time was reasonable in light of the foreseeable risks, taking into consideration Morris's circumstances and his ability to restack the lumber on his own. If it is found that it was reasonable, then Hankins Lumber was not negligent and it should not have been apportioned liability for damages. The evidence indicated that the Hankins Lumber facility in Elliott was less than a mile away when Morris stopped to call. Jones admitted that he told Morris to go back to the facility in Sturgis, 50 miles away, rather than to the Elliott facility, to reband a load that he knew was not safe. We find that the evidence was sufficient to support the verdict and that the verdict was not contrary to the substantial weight of the evidence in that there was ample evidence presented from which the jury could conclude that Hankins Lumber did not act prudently under the circumstances.

What was the proximate cause of Moore's injury?
¶ 14. An often quoted passage regarding proximate cause is found in Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34, 36 (1943):
Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a nonactionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof. The question is, did the facts *465 constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury?
Id., 13 So.2d at 36.
¶ 15. Hankins Lumber cites several cases in support of his argument that it was Morris's failure to restack the lumber which was the proximate cause of the accident, not the alleged negligent banding of the lumber by Hankins Lumber. In Tombigbee Elec. Power Ass'n v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953), judgment was for the plaintiff where there was evidence that the power company was negligent in the placement of power lines over the roof of the plaintiffs building in violation of a safety code, but there was no evidence that the placement of the power lines had caused the fire. The court reversed for failure to grant a JNOV. Id., 216 Miss. at 457, 62 So.2d 567. In that case the plaintiff relied on an inference that the insulation on the wires had deteriorated to such an extent as to expose the wire, notwithstanding the fact that there was not one word of testimony regarding the insulation of the wires. Tombigbee Elec. Power Ass'n, 216 Miss. at 452, 62 So.2d 567. We find this case distinguishable for several reasons. First, there was ample evidence showing that Morris's load was improperly banded and that it could have been the cause of the accident. Second, once Morris became aware that his logs were loose and called Hankins Lumber in Elliott who refused to help, it was for the jury to determine if the conduct of Hankins Lumber at that time was reasonable in light of the foreseeable risks. It is within the province of the jury to decide whether these facts constitute a succession on events, linked together as a whole, or whether Morris's failure to restack the lumber was an independent cause of the injury. Mississippi City Lines, 13 So.2d at 36. If the jury found that it was reasonable, then Hankins Lumber should not have been found negligent and should not have been apportioned liability for damages. Hankins Lumber asserts that it was out of the picture once Morris, an independent contractor, loaded his truck and left the lumberyard. Whether this is so is a jury issue and depends on whether Hankins Lumber should have foreseen that conditions were ripe for an accident such as Morris's when Morris called and whether it breached a duty at that time. These are issues for the finder of fact once sufficient evidence is presented in a negligence case. American Nat. Ins. Co., 749 So.2d at 1259. We find that the evidence was adequate to support the jury's conclusion that Hankins Lumber did not act reasonably or prudently under the circumstances.
¶ 16. The appellant also cites Pargas of Taylorsville, Inc. v. Craft, 249 So.2d 403, 407 (Miss.1971), to support its argument that the proximate cause of the accident was Morris's failure to restack the lumber. In that case the defendant maintained a propane gas facility near a public highway. The facility was not enclosed by a fence as called for by the state's regulations. The plaintiff's vehicle was hit by another vehicle and was propelled into the propane gas facility, causing a fire in which the plaintiff was severely burned. The verdict was for the plaintiff and Pargas appealed, assigning as error the refusal of the court to grant a JNOV. The supreme court reversed, stating that Pargas's negligence was passive and did not proximately contribute to the damage. Id. at 409. This case is easily distinguishable from the case at bar in that the evidence showed that regardless of the fence and other factors discussed in the case, the accident and the injuries would have occurred. The accident was clearly an independent cause intervening between the alleged wrong and the injury. Mississippi City Lines, 13 So.2d at 36. Again, it is a question of fact whether improper banding caused the accident and whether Hankins Lumber should have foreseen that conditions were ripe for an accident when Morris called and whether it breached a duty to Morris at that time. It is within the province of the jury *466 to decide whether these facts constitute a succession of events, linked together as a whole, or whether Morris's failure to restack the lumber was an independent cause of the injury. Mississippi City Lines, 13 So.2d at 36; American Nat. Ins. Co., 749 So.2d at 1259.
¶ 17. Appellant also finds relevant E.I. DuPont de Nemours & Co. v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954). In that case Du Pont sold a chemical to Magnolia Soy Products Company which was used in a by-product and sold for animal feed. The chemical had many legitimate uses but Du Pont later learned that the chemical was poisonous to cows and warned Magnolia not to sell the feed for cows. Magnolia continued to sell the feed and Ladner lost several cows after using the feed. Ladner settled with Magnolia, and a jury found for Ladner against Du Pont. On appeal the court reversed, finding that Magnolia's negligence was an independent intervening act which broke the chain of causation, making any negligence of Du Pont inoperative and the negligence of Magnolia the sole proximate cause of Ladner's injury. Id. at 403, 73 So.2d 249. The opinion of the court stated that if Du Pont were to be found liable, the liability must be predicated on its failure to exercise due care in warning Magnolia of the dangers incident to the use of the chemical. Id. at 400, 73 So.2d 249. The application of this rationale to the case at bar would require a determination of whether Hankins Lumber exercised due care when it responded to Morris's call for help when he was in Elliott. It is within the province of the jury to decide whether these facts constitute a succession of events, linked together as a whole, or whether Morris's failure to restack the lumber was an independent cause of the injury. Mississippi City Lines, 13 So.2d at 36; American Nat. Ins. Co., 749 So.2d at 1259.
¶ 18. Hankins Lumber also asserts that it should not have been required to anticipate that Morris might continue his journey after failing to properly secure his load and cites Capitol Tobacco & Specialty Co. v. Runnels, 221 So.2d 703 (Miss.1969), in support. In that case the court found that a driver headed north at a high rate of speed was not required to anticipate that a car would drive across the median and jump into the highway causing a collision. Again, the question is whether it was reasonable for Hankins Lumber to have foreseen that conditions were ripe for an accident when Morris called and whether it breached a duty at that time. These are issues for the finder of fact. American Nat. Ins. Co., 749 So.2d at 1259.

Is Hankins responsible to Morris, an independent contractor?
¶ 19. We turn to the general law of torts to determine the duties of an employer toward an independent contractor under the circumstances presented in this case. A principal who retains control of a part of the work entrusted to an independent contractor is subject to liability for physical harm to those to whom he owes a duty to exercise reasonable care caused by his failure to exercise his control with reasonable care. Moser v. Texas Trailer Corp., 623 F.2d 1006, 1015 (5th Cir.1980). The fact that Morris was acting as an independent contractor does not thus automatically relieve Hankins Lumber of liability. Since Hankins Lumber was in control of banding the lumber into bundles and loading the bundles on to Morris's truck, it had a duty to exercise reasonable care and is subject to liability for harm caused by any failure to use reasonable care in banding and loading the bundles.

Remittitur
¶ 20. Though Moore incurred less than $9,000 in actual damages, the jury awarded $80,000 to him, which Hankins Lumber claims to be excessive. It is the province of the jury to award the amount of damages, and the award will not be set aside unless it is so unreasonable in amount "as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Harvey v. *467 Wall, 649 So.2d 184, 187 (Miss.1995). We do not find this to be the case, in light of the evidence as a whole, including the medical testimony that Moore's back problems could recur. We therefore do not believe that remittitur is justified.
¶ 21. Having found no reversible error, we affirm.
¶ 22. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, PAYNE, AND THOMAS, JJ., CONCUR. MOORE AND MYERS, JJ., NOT PARTICIPATING.