KITCHENS, Justice,
dissenting:
¶ 34. I dissent from the majority’s conclusion that Dr. Obie McNair was not qualified to opine whether Robinson’s fall at Bailey Lumber exacerbated his pre-exist-ing condition so greatly that hip-replacement surgery was necessary. Maj. Op. at ¶ 14.

Qualification

¶ 35. The majority agrees with Bailey Lumber that Dr. McNair was not qualified to give a causation opinion, because this physician is an internal medicine specialist with a subspeciality in pulmonology, not an orthopaedic surgeon. Thus, the majority concludes that whether the fall aggravated Robinson’s osteoarthritis to the degree that surgery became necessary was outside Dr. McNair’s area of expertise. Maj. Op. at ¶21. In support of this premise, the majority cites Troupe v. McAuley, 955 So.2d 848, 858 (Miss.2007), a medical malpractice case in which this Court held that the trial court did not abuse its discretion by excluding the testimony of a neurosurgeon regarding the standard of care for a neuro-otolaryngologist. Additionally, the majority relies on Cheeks v. Bio-Medical Applications, Inc., 908 So.2d 117, 120-21 *999 (Miss.2005), where this Court held that a family physician, with no previous experience concerning dialysis procedures, could not testify regarding the standard of care for a dialysis clinic and its physicians. The majority is remiss in its reliance on medical malpractice cases in that the standard of care received by Robinson is not at issue in the instant case, given that this was a premises liability cause of action, involving a trip-and-fall accident.
¶ 36. The trial court accepted Dr. McNair as an expert in internal medicine and primary care. Dr. McNair[4] testified that, as an internal medicine physician, he is a specialist in adult medicine. He said that he is on staff at Central Mississippi Health Center, Baptist Hospital, and St. Dominic Hospital, where he is an attending physician who treats patients with various medical and surgical disorders. In his thirty-year career, he has diagnosed thousands of patients with osteoarthritis. He has treated hundreds of patients with hip-related problems related to fractures, osteoarthritis, and hip-replacement surgery, but he acknowledged that he is not a specialist in orthopaedic surgery.
¶ 37. According to Dr. McNair, he was the first healthcare provider to examine Robinson, a little more than two weeks after the fall. During the course of the examination, Robinson complained of acute pain in his left hip and had an abrasion on his arm. According to Dr. McNair, x-rays revealed osteoarthritis in the hip. Dr. McNair testified that his diagnostic impression was that Robinson eventually would need hip-replacement surgery. At a two-month, follow-up examination, Robinson continued to complain of pain in his left hip, and Dr. McNair expressed to Robinson that a referral to an orthopaedic surgeon for possible hip-replacement surgery was necessary. Because Robinson was not being treated for his pre-existing condition before the fall, Dr. McNair was able to conclude that the fall had contributed to Robinson’s hip pain.
¶ 38. Based on his experience and expertise in diagnosing and treating patients with Robinson’s kind of condition, I am of the opinion that Dr. McNair was properly “qualified as an expert by knowledge, skill, experience, training, or education” to render an opinion about causation. Miss. R. Evid. 702. Nothing in the record suggests that Dr. McNair provided any testimony that was outside the parameters of his expertise as an internal medicine and primary care physician. Dr. McNair was the first healthcare provider to see Robinson after his fall. Robinson was not being treated for his pre-existing arthritis prior to the fall. Robinson testified that, immediately after the fall, he had experienced pain in his left hip. He sought treatment for the pain fifteen days after he tripped and fell onto his left hip at Bailey Lumber and, a little more than a year later, required replacement surgery for that hip. Reliability
¶ 39. A party offering expert testimony “must show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation.” McLemore, 863 So.2d at 36 (citing Daubert, 509 U.S. at 590,113 S.Ct. 2786).
¶ 40. Dr. McNair conducted a physical examination that revealed a limited range of motion in Robinson’s left hip. An x-ray showed that Robinson had osteoarthritis, specifically a loss of joint space in his hip, referred to as sclerosis. Dr. McNair then *1000 diagnosed Robinson with osteoarthritis and referred him for orthopaedic surgery. At trial, Dr. McNair opined to a reasonable degree of medical probability that Robinson had osteoarthritis in his hip before his fall at Bailey Lumber, but that, because the fall had injured the hip already damaged by osteoarthritis, his condition was aggravated to such a degree that hip-replacement surgery became necessary. “This Court has held that the winner in a battle of the experts is to be decided by a jury.” Hill v. Mills, 26 So.3d 322, 330 (Miss.2010). Thus, where the respective experts of the opposing parties had conflicting opinions, the disputed issue was for the fact finder to resolve.
¶ 41. The majority makes much of Dr. McNair’s having changed his opinion. Dr. McNair was cross-examined regarding two separate questionnaires that he had filled out in July 2008 and November 2008 at the behest of Robinson’s counsel. One indicated that the cause of Robinson’s hip injury was unknown; the second indicated that the fall at Bailey Lumber had aggravated Robinson’s pre-existing condition. Dr. McNair testified that, while the first questionnaire was done without benefit of Robinson’s complete medical history, the second was prepared with the benefit of Robinson’s history of prior injuries. Dr. McNair testified that he had not wished to opine whether Robinson’s fall at Bailey Lumber had aggravated his osteoarthritis until he had a complete history and could rule out that prior injuries had advanced Robinson’s pre-existing condition.
¶42. This Court has held that “questions of weight and credibility of [expert] testimony are determined by the trier of fact.” Univ. Med. Ctr. v. Martin, 994 So.2d 740, 747 (Miss.2008) (citing Palmer v. Biloxi Reg’l Med. Ctr., Inc., 564 So.2d 1346, 1355 (Miss.1990)). The trial judge is allowed “the widest possible discretion” in determining whether a witness is qualified to testify as an expert, and that decision will be disturbed only when there has been a clear abuse of discretion. Sheffield v. Goodwin, 740 So.2d 854, 856 (Miss.1999) (citing Palmer, 564 So.2d at 1357). The weight and credibility to be assigned to Dr. McNair’s testimony versus that of Drs. Laken and Shelton was for the jury to determine.
¶ 43. Even without Dr. McNair’s testimony that the fall was the direct cause of the worsening of Robinson’s previously existing health condition, the circumstantial evidence was sufficient to support the element of causation and, thus, Robinson’s theory of negligence. See Tombigbee Elec. Power Ass’n v. Gandy 216 Miss. 444, 454, 62 So.2d 567, 570 (Miss.1953) (“We are fully mindful of the rule that negligence may be established by circumstantial evidence and that the causal connection between an agency and the injury need not be shown by direct evidence ...”). In reaching this conclusion, I believe that we should adopt the reasoning employed by the dissent in Martin v. St. Dominic-Jackson Memorial Hospital, 90 So.3d 43, 44, 49-50 (Miss.2012) (Lamar, J., dissenting), which asserted that a medical expert’s inability to testify in a slip-and-fall case as to whether the injury was caused by the plaintiffs fall versus the “normal wear and tear” associated with arthritis was not crucial to the plaintiff surviving a motion for directed verdict, given the amount of circumstantial evidence that the fall had caused the injury.
¶ 44. The circumstantial evidence alone was enough to support the jury’s verdict in favor of Robinson and the trial court’s subsequent denial of Bailey Lumber’s motion for judgment notwithstanding the verdict, or alternatively, for a new trial. Robinson testified that he immediately had experienced pain in his left hip after the *1001 fall. He continued to experience pain in the left hip for more than two weeks and sought medical attention from Dr. McNair. He exhibited a limited range of motion in his hip during the course of a physical examination. He was diagnosed with osteoarthritis based on results of his x-ray, a condition which had not caused him pain before his fall at Bailey Lumber. After the fall, there was never a period of time during which Robinson’s osteoarthritis was asymptomatic. The prescribed treatment for this level of osteoarthritis was a hip replacement. Generally, “[o]ne who injures another suffering from a pre-existing condition is liable for the entire damage when no apportionment can be made between the pre-existing condition and the damage caused by the defendant — thus the defendant must take his victim as he finds her.” Blake v. Clein, 903 So.2d 710, 730 (Miss.2005) (quoting Brake v. Speed, 605 So.2d 28, 38 (Miss.1992)).
¶45. The jury found Bailey Lumber 100% liable for Robinson’s injuries and returned a verdict in favor of Robinson in the amount of $1.5 million. “The amount of damages awarded is primarily a question for the jury.” Maddox v. Muirhead, 738 So.2d 742, 744 (Miss.1999) (citing South Cent. Bell Tel. Co. v. Parker, 491 So.2d 212, 217 (Miss.1986); Edwards v. Ellis, 478 So.2d 282, 289 (Miss.1985)). The trial court in its final judgment reduced that amount to include only Robinson’s actual past medical expenses, including the hip-replacement surgery performed by Dr. Laken.[5] I see no reason to set aside the verdict and subsequent final judgment in the instant case, given that, even without Dr. McNair’s testimony that the fall directly caused Robinson to undergo the hip-replacement surgery and to incur associated medical expenses, ample circumstantial evidence supported the jury’s finding. Accordingly, I would affirm.
CHANDLER AND KING, JJ., JOIN THIS OPINION.

. Dr. McNair received his post-graduate degree as a medical doctor from Tufts University, completed his internship and residency in internal medicine at Emory University, and completed his residency in pulmonary medicine at Howard University.

. Robinson has not appealed the trial court’s final judgment.