204 So.2d 451 (1967)
BURNLEY SHIRT CORPORATION and Zurich Insurance Company
v.
Mrs. Hazel SIMMONS.
No. 44552.
Supreme Court of Mississippi.
December 4, 1967.
Alben N. Hopkins, Ruby B. Weeks, Daniel, Coker & Horton, Jackson, for appellants.
H.C. Mike Watkins, Meridian, for appellee.
*452 BRADY, Justice:
Appellee in this workmen's compensation case filed a claim seeking benefits for injuries which she sustained as a result of an electrical shock experienced while at work, and for a subsequent back injury experienced during her convalescence. From adverse rulings by the attorney referee, the Workmen's Compensation Commission, and the Circuit Court of Lauderdale County, the employer and carrier prosecute this appeal.
The appellee was employed by Burnley Shirt Corporation in Meridian on May 17, 1965. While engaged in using a hand iron to press shirts at approximately 7:00 A.M., she received an electrical shock, the only external evidence of which was a burned thumb. Appellant's branch manager, James M. Bass, and another employee immediately carried appellee to the hospital, at which time she requested to have Dr. William Gillespie, her family doctor, see her. She complained of headaches and stomach trouble after the incident but the record discloses that the same complaints had been made prior to the accident of May 17, 1965. The only medical evidence presented is a typewritten medical report of Dr. William Gillespie dated November 5, 1965, which gives a complete history of the appellee's original episode and the subsequent developments. Her testimony that she remained in the hospital from May 17 to May 21 was corroborated by her doctor. The doctor's report shows that all the physical findings were essentially normal except a first degree burn of the left thumb which was caused by the electrical shock. The doctor's report stated that she was treated conservatively with muscle relaxants, antiemetics, and analgesics. She was discharged with the diagnosis of accidental electrical shock, severe myalgia cervical muscles, and severe nausea and vomiting. She was instructed when she left the hospital that she was to be followed on an out-patient basis until she had recovered.
The doctor saw the appellee at regular intervals at his office and on most of the visits she complained of having severe headaches, nausea and vomiting. The doctor found that she seemed to have a moderate amount of anxiety reaction associated with these complaints, and concluded, therefore, that the patient was unable to work or return to her job. The same conservative treatment was continued with the patient showing temporary improvement for several days at a time, but there would be remissions of severe headache, nausea and severe vomiting. The patient was on continuous therapy for relief of these complaints.
The doctor's report indicates that during approximately the last week in June she began to complain of pain in her abdomen in addition to the other complaints. The doctor believed that these symptoms could be compatible with the development of a peptic ulcer and the appellee was put on a strict diet. She continued to take medication for her headaches and neck pain which the doctor believed to be due to the electrical shock.
On August 4, 1965, the epigastric pain and distress had become so severe the doctor felt it necessary to readmit appellee to the hospital, at which time x-rays revealed an acute duodenal ulcer. The doctor found that the ulcer had been precipitated by the large amounts of analgesics and other medication which the appellee had to take for her severe headaches. The doctor's report discloses that under a strict ulcer regime the abdominal complaints ceased, headaches improved, and vomiting ceased. The appellee was discharged from the hospital on August 17, having been confined there approximately two weeks.
During the next several weeks appellee's headaches and neck pain subsided to the extent that she needed no analgesics or muscle relaxants, and she contemplated returning to work. While getting out of *453 bed one morning she experienced a sharp pain in the low back area which the doctor diagnosed as acute sacro-iliac strain on the right side. To relieve the acute pain and spasms in her back she had to resume taking muscle relaxants and analgesics and shortly thereafter suffered a recurrence of nausea, headaches, and abdominal pain. As a result, she was hospitalized again on October 4, and remained in the hospital for five days. At the time of her discharge on October 9, 1965, tests revealed that the ulcer had healed. At the time of the doctor's last examination of appellee on November 13, 1965, she still complained of headaches and vomiting.
Dr. Gillespie concluded that appellee had been disabled since her accident on May 17, 1965. It was also his conclusion that the headaches, neck spasms, vomiting and anxiety reaction resulted from the electrical shock and that the medications prescribed for these symptoms produced the duodenal ulcer. However, the doctor was not willing to state that there was a connection between appellee's electrical shock and her back injury, as is shown by the following excerpt from his report:
It is difficult for me to say that the back symptoms which began approximately three months after the original episode would be due to the accidental electrical shock. I feel that this was an unfortunate happening which the patient experienced while in her home. * * * It is possible that the patient's back injury happened because of her weakness and general debility.
The findings of the attorney referee follow closely the doctor's report, quoting it verbatim et liberatim in some instances. The attorney referee found that the appellee has been disabled since her accident on May 17; that her headaches, neck spasms, vomiting, and anxiety reaction were related to the accidental electrical shock; and that the acute duodenal ulcer developed as a result of her taking medication for the relief of the symptoms caused by her shock. However, the attorney referee found as a fact that there was no causal connection between the appellee's accident of May 17 and her back injury, and found also that she had not reached maximum medical recovery. The attorney referee's order, which was affirmed by the Commission and by the circuit court, provided that the appellee was to receive benefits for temporary total disability, commencing on May 18, 1965, and payable until such time as she reached maximum medical recovery, at which time a reevaluation of her condition was to be made. The order provided that she was to receive medical services and supplies necessitated by her injury but specified that she was to receive no benefit for treatments which were necessitated by her back condition. Additionally, the order provided for section 13(e) penalties on all compensation unpaid.
The basic issue presented for consideration in this case is: Has the appellee reached maximum medical recovery from the electrical shock and the causally connected illness or disabilities resultant therefrom, and, if so, upon what date was this recovery complete? The determination of this question is for the Commission, based upon competent medical and lay testimony. An objective analysis of the medical evidence convinces us that the attorney referee, the Commission and the circuit court were correct in holding that the claimant's back injury bears no causal relationship to her accidental injury of May 17.
The lay testimony in this case establishes that the appellee suffered but it does not connect the back injury with the appellee's original electrical shock. The only evidence which even remotely could be of any comfort to the appellee is the doctor's statement that "it is possible the patient's back injury happened because of her weakness and general debility." This statement of Dr. Gillespie is insufficient to establish causal connection because it is predicated only upon a possibility; and we have held that recoveries in compensation cases must be based on probabilities. In *454 Franks v. Goyer Company, 234 Miss. 833, 839, 108 So.2d 217, 219 (1959) we stated:
Long before Mississippi had a Workmen's Compensation Law, this Court has repeatedly held that recoveries must rest upon reasonable probabilities and not upon mere possibilities. See Illinois Central Railroad Company v. Cathey, 70 Miss. 332, 12 So. 253; Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625; Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 62 So.2d 567, and the long list of like cases cited in 216 Miss. at page 456, 62 So.2d at page 571.
See Miller Transporters, Ltd. v. Dean, 254 Miss. 1, 179 So.2d 552 (1965).
For the appellee's back injury to be compensable it is essential that it be a direct and natural result of the primary compensable injury. In 1 Larson, Workmen's Compensation Law section 13.11 it is stated that whether or not the claimant's subsequent conduct is an independent intervening cause cannot be determined by reference to conventional causation principles alone; but rather the test must include a combination of "course" and "arising out of" elements. Larson comments as follows:
Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call `quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. Id. at 192.67-.68.
It is apparent according to Professor Larson that an injury following the initial compensable injury which does not arise out of a quasi-course activity is not compensable. It is apparent, therefore, that the sacro-iliac pain which appellee experienced was not connected with the primary or subject injury and is outside the quasi-course activity test. The attorney referee found, with the Commission's concurrence, that there was no connection between the back injury and the initial electrical shock and its consequences. In 6 Schneider, Workmen's Compensation Text section 1543(f) (1948) is found the following statement which has application here:
To create liability, the disability suffered must be the consequence of a continuous chain of causation so connected that the act or force complained of is carried through from the employment to the accident to the injury and to the disability. If an intervening independent agency breaks the chain of causation so as to destroy the original force, the employer is relieved from injuries following the termination of the force which the employment set in motion.
* * * It makes no difference how long the chain nor how many links, as long as each act or link accounts for the next, the liability existing in the first injury is carried forward to the last. But if an independent agency intervenes at any point to terminate the effect of the original accident, that ends the liability of the employer for any injuries occurring thereafter. Id. at 53-54 (footnotes omitted).
We find a situation which is comparable to the rule established in Rathborne, Hair & Ridgeway Box Company v. Green, 237 Miss. 588, 115 So.2d 674 (1959), wherein we said:
(W)hen the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable. Id. at 594, 115 So.2d at 676.
*455 This rule was followed in Miller Transporters, Ltd. v. Dean, supra; Crow v. Guy Scoggins Gen. Oilfield Contracting Co., 248 Miss. 1, 158 So.2d 1 (1963); and Malone v. Ingalls Shipbuilding Corporation, 240 Miss. 319, 127 So.2d 403 (1961).
As to the question concerning this Court's authority to reverse erroneous rulings of law and of fact, we again refer to Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So.2d 351, 112 So.2d 230 (1959), where we said:
The general rule is that a decision of the commission on disputed issues of fact will be affirmed, where there is substantial and reasonable evidence in the record to support the commission's findings of fact. As an abstract statement, that rule is correct, but it means nothing apart from the statutory standards and the judicial standards based upon the statute which have been established in a large number of cases in recent years. These standards always consist of two parts, one defining the type of questions administrative determination of which is binding upon the courts, and another which defines the type of questions that are reviewable by the courts. But either part is and should be sufficiently flexible to permit the court to check any fundamentally erroneous exercise of administrative power. And questions of fundamental importance are always open to judicial review.
* * * * * *
* * * The statute provides that the court "shall review all questions of law and of fact", and, if prejudicial error is found, the case should be reversed. Id. at 388-89, 110 So.2d at 356.
In conclusion, the proof in this case does not positively establish that the appellee has fully recovered from her original electrical shock and the attendant direct infirmities resulting therefrom. The independent intervening back injury, as the Commission properly held, is not to be considered in determining when appellee has recovered sufficiently to return to work. The judgment of the circuit court is therefore affirmed and this cause is remanded to the Workmen's Compensation Commission in order that it may determine if and when the appellee has reached the maximum recovery. The Commission is expected to enter proper orders when the appellee has reached the maximum recovery.
Affirmed.
GILLESPIE, P.J., and RODGERS, JONES, INZER and ROBERTSON, JJ., concur.