344 So.2d 141 (1977)
MEDART DIVISION OF JACKES-EVANS MANUFACTURING COMPANY, INC. and Fireman's Fund Insurance Company
v.
Frances E. ADAMS.
No. 49274.
Supreme Court of Mississippi.
March 30, 1977.
Daniel, Coker, Horton, Bell & Dukes, Roger C. Clapp, Jackson, for appellant.
Fraiser & Burgoon, James W. Burgoon, Jr., Greenwood, for appellee.
Before INZER, SUGG and LEE, JJ.
SUGG, Justice:
Claimant, Frances E. Adams, was employed in December, 1971 by the defendant, Medart Division of Jackes-Evans Manufacturing Company, Inc. Her duties included punching holes in locker handles with an air drill. On January 17, 1972, while working at Medart, claimant reached into a fifty-five gallon barrel where the locker handles were stored. After securing a box of locker handles from the barrel she began to straighten up and felt a sharp pain in her back. She reported the incident to the personnel manager who in turn referred her to the company physician. Claimant was placed on medication and told to remain in bed for several days. By the first of February claimant's condition had not improved so she was referred to Dr. Blake, an orthopedic surgeon. Dr. Blake placed her in a hospital in Greenwood for physical therapy for a period of fourteen days.
Claimant was examined several times by Dr. Blake after being released from the hospital and because her condition had not improved by the first of March she was *142 referred to Dr. Naef, a neurologist. Dr. Naef performed a myelogram that revealed protruded discs at the L-4 and L-5 level. Surgery was performed on March 23, 1972 by Dr. Blake.
After her release from the hospital following surgery, Dr. Blake examined claimant on May 3 and felt that her recovery was "satisfactory, but a bit slow." Claimant returned for an examination on June 28 at which time she complained of discomfort in her back and peculiar sensations in her left hip and leg. She had normal movement in her spine but a stiff leg raising test on her left lower extremity was positive. Dr. Blake again referred claimant to Dr. Naef who examined her on July 14. On this date claimant's condition had grown considerably worse and she stated to Dr. Naef that she experienced severe pain in her back while picking up some clothes out of a clothes basket at her home on July 2, 1972. Dr. Naef performed another myelogram that revealed the need for further surgery. Dr. Blake again performed surgery and discovered extensive scar tissue and a recurrence of protruded discs at the same situs of her previous problem.
After a second surgical procedure Mrs. Adams was referred to Dr. Walter Neill, a neurosurgeon, because of continued numbness and discomfort in her left leg. Dr. Neill performed another myelogram followed by a rhizotomy on September 20, 1972 to relieve claimant's intractable pain problem. Dr. Neill cautioned the patient that she would experience loss of propriaception in her left ankle and that she would have to watch her leg movements carefully so she would not turn her left ankle. He continued treating her and on July 17, 1973, determined that she had reached maximum medical recovery. Dr. Neill stated,
I feel that she does have some propriaception loss in her ankle and because of her pain and residual stiffness in her back, I feel that she has a residual permanent partial disability of about 20% and I feel that her temporary total disability was over at that time.
When asked if he had an opinion as to whether claimant could perform all of the acts required of her in the same type or similar type employment as before her injury and the resulting treatment, Dr. Neill replied:
I think that she would be able to do that. I assume that she does require some agility with her feet also  walking and going from place to place. She would be able to do this with a 20% limitation and whether or not with this 20% limitation that she could do this work or return to it, or be hired back at it because of the limitation, I don't know. This would be because of loss of propriaception in her left ankle and loss of residual  some residual  and some additional residual stiffness of her back.
In January, 1973 Medart stopped paying any compensation benefits for claimant because several of the company employees reported that she served them a round of drinks at the Downtowner Motor Inn in Greenwood. Claimant and the management of the Downtowner denied that she was employed by the motel and denied that she served the employees. In February, 1973 claimant was employed for part time clerical work at a salary of $50 per week. The work was to be performed in three working days during each week and claimant could select her own working hours.
The administrative judge awarded claimant compensation for temporary total disability from the date of the injury through February 6, 1973. He awarded compensation for 15% permanent partial disability beginning July 18, 1973 and continuing for a period not to exceed four hundred fifty weeks. He ordered defendant and its carrier to pay all reasonable medical expenses incurred by the claimant and assessed penalties and interest on all compensation payments due but unpaid.
Both parties appealed to the full Commission which modified the award of the administrative judge. The Commission ordered Medart to pay for claimant's total temporary disability from the date of the injury through July 17, 1973 and to pay *143 permanent partial disability at the rate of 20% beginning on July 18, 1973 for a period not to exceed four hundred fifty weeks together with penalty and interest on the amount due and unpaid.
Medart appealed to the circuit court. The circuit court affirmed the Commission's order except for the provision that required Medart to pay penalties for compensation due but unpaid during the seven month period following the submission of the case to the Commission until the Commission finally entered an order. Penalties were exempted on this period by the circuit judge because of the Commission's unreasonable delay in entering an order.
Medart appealed from the order of the circuit court with supersedeas. Claimant did not cross appeal.
The only question in this case that merits discussion is whether claimant's injury of July 2, 1972 resulting from bending over to pick up some clothes in her home is an independent intervening nonindustrial cause.
The burden of proof is on Medart and its carrier to establish an independent intervening nonindustrial cause. In Dunn, Mississippi Workmen's Compensation 2nd Ed. § 166 at 221 (1967) we find the following:
Once it is shown that a disability was produced by an injury and that the employee continues to be disabled, the presumption is that the disability continues to be causally related to the injury, and the burden of proof is upon the employer to show that the continuing disability is due to some other intervening cause or pre-existing condition for which he is not responsible.
The general rule concerning an independent intervening injury is stated in 1 Larson's Workmen's Compensation § 13.00 at 3-279, as follows:
When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.
Professor Larson speaks more specifically to the question as follows:
Moreover, once the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. This may sound self-evident, but in close cases it is sometimes easy to overlook this essentially simple principle. In a Utah case, claimant had suffered a compensable accident in 1966, injuring his back. Several years later, this condition was triggered by a sneeze into a disc herniation, for which claimant required surgery. The medical testimony was that because of the back condition, it was probable that had claimant not had the sneezing episode, some other major or minor event would have eventually necessitated surgery. The finding that the sneezing episode was the independent cause of claimant's disability, and the resultant denial of compensation, were held to be error, and benefits were awarded on appeal. This result is clearly correct. The presence of the sneezing incident should not obscure the true nature of the case, which is nothing more than that of a further medical complication flowing from a compensable injury. If the herniation had occurred while claimant was asleep in bed, his characterization as a mere sequel to the compensable injury would have seemed obvious. The case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances. A different question is presented, of course, when the triggering activity is itself rash in the light of claimant's knowledge of his condition. (§ 13.11 at 3-283). (Emphasis supplied).
*144 Following claimant's surgery Dr. Blake advised her to expand her activities within the limits of her stamina. Her act of July 2, of bending over to pick up clothes was simply a triggering episode and claimant's act in performing this simple task was not unreasonable under the circumstances. The complications which arose following the bending episode of July 2 were not the result of an independent intervening cause, but was the progression of claimant's compensable injury. The facts clearly bring claimant's case within the scope of the rule so ably stated by Larson, supra. Her disability resulting from the bending episode and the second and third surgical operations are compensable as medical consequences flowing from the primary injury.
Appellants rely on Burnley Shirt Corporation v. Simmons, 204 So.2d 451 (Miss. 1967) and argue that our decision in Burnley precludes claimant from recovery for permanent partial disability. The facts in the case at bar are readily distinguishable from the facts in Burnley where the claimant sustained an electrical shock on May 17, 1965, while in the course of her employment. As a result of the injury, claimant suffered from nausea, headaches and vomiting, requiring medical treatment through August 17, 1965. During the next several weeks claimant's symptoms subsided to the extent that medical treatment was discontinued and she considered returning to work. While getting out of bed one morning claimant sustained an injury to her lower back, and sought compensation as a result of this back injury. We affirmed the Commission's and circuit court's determination that the back injury was not causally connected to her initial injury and therefore, not compensable. It was clear from the testimony in Burnley that the claimant's back injury was not a progression of the compensable injury that she sustained by electrical shock. Burnley has no application to the facts in this case.
We affirm the judgment of the circuit court and remand to the Workmen's Compensation Commission for computation of the amounts due claimant including penalties.
AFFIRMED AND REMANDED TO WORKMEN'S COMPENSATION COMMISSION.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.