410 So.2d 1322 (1982)
KELLY BROTHERS CONTRACTORS, INC., Employer, and Travelers Insurance Company, Carrier,
v.
Dependents of Gentle WINDHAM, Deceased.
No. 53064.
Supreme Court of Mississippi.
March 17, 1982.
Gibbes, Graves, Mullins, Bullock & Ferris, Brooke Ferris, Laurel, for appellant.
William B. Sullivan, Laurel, Peter K. Smith, Quitman, for appellees.
Before WALKER, ROY NOBLE LEE and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Clarke County, Mississippi, affirming an award of death benefits under the Mississippi Workmen's Compensation Act, payable to the dependents of Gentle Windham, deceased. Windham was injured in a job-related accident on June 29, 1977, while employed as a truck driver by Kelly Brothers Contractors, Inc. when the truck that he was driving turned over and injured his head. He received benefits as the result of his injury, but died before reaching maximum medical recovery.
The administrative judge found the evidence insufficient to establish a causal connection between the June 29, 1977, injury and Windham's death. The full commission reversed, finding Windham's death accidental and compensable because the medication taken by him was prescribed for relief of the symptoms caused by his industrial injury. The full commission's finding was appealed to the circuit court and Kelly Brothers Contractors, Inc. and Travelers Insurance Company appeal from the circuit court's order affirming the commission's findings. We affirm.
Appellant assigns the following as error:
1. The intentional and negligent act of the decedent constituted an independent intervening cause of death, barring recovery.
2. The legal principle relied upon by the lower court, and the commission, has no application in this case, and is not controlling.
3. The hypothetical question propounded to the psychiatrist was improper and the medical evidence was insufficient to establish a causal relationship between decedent's injury and his death.
On June 29, 1977, Windham, an employee of Kelly Brothers Contractors, Inc., overturned a truck while attempting to unload dirt therefrom. Following the accident, he *1323 was treated by Dr. Charles Bush of Waynesboro, Mississippi; however, Dr. Bush referred him to Dr. Loren Fleckenstein, a specialist in neurological surgery.
Windham's history revealed severe generalized headaches following the accident. He denied being knocked unconscious but related he could not hear out of his right ear and experienced numbness in his right arm. The accident also loosened his teeth. He exhibited anxieties about his state of health that were inordinate for the normal individual, appearing overly worried about minor symptoms. Dr. Fleckenstein again saw Windham on August 8, 1977, at which time he continued to complain of headaches and nervousness. He still exhibited anxiety and also hyper-reacted to stimuli on examination and blacked out on three or more occasions. On September 9, 1977, his headaches had improved, but he still complained of nervousness, so Dr. Fleckenstein referred him to Dr. William H.C. Dudley, a psychiatrist.
Dr. Dudley examined Windham on October 17, 1977, observing he was extremely depressed and anxious. Dr. Dudley attributed Windham's depression to the June 29, 1977, accident. Etrafon, a combination tranquilizer and antidepressant, was prescribed and Windham was scheduled to return in two weeks. When he returned, he looked better and reported dramatic improvement. His medication was changed from four times daily to four tablets at bedtime to correct irregular sleeping habits. He failed to return to Dr. Dudley at his next scheduled appointment.
Dr. Fleckenstein examined Windham for the last time on November 28, 1977, and Windham related he felt all right and was ready to return to work, which never occurred because he passed away under bizarre circumstances on December 7, 1977. Dr. Fleckenstein never prescribed any medication for Windham due to his limited mental capacities regarding understanding of instructions.
Windham's wife and daughter asserted he changed following the June 29, 1977, accident, relating that following the accident, he blacked out on occasions, spent less time with his family, worried about paying the bills and providing for his family, and also beat his daughter on one occasion.
On December 7, 1977, Windham and his wife stayed together until about 3:15 p.m. He then accompanied T.B. Webb, John Arrington and Willie McGill to take John Arrington home. Windham, Webb and McGill then purchased a half pint of liquor and went to McGill's house for a friendly game of poker. Windham and Webb left at some point and went to Windham's sister's house to borrow some money, then returned to the game. When the liquor was gone and the game over, Webb took Windham by his sister's house once again. Apparently Windham was the big winner at the poker game. T.B. Webb then carried him home. No one asserted that Windham was drunk on this occasion.
Windham arrived home about 11:00 p.m., asked for something to eat and then went into the bedroom. When his wife walked into the bedroom, she saw him with a handful of pills and she told him to take only four, whereupon he threw the pills in his mouth and drank some water. He then tried to take some more pills; however, his wife successfully removed them from his hand. They began walking Windham and attempted to induce vomiting. However, he lost consciousness and subsequently died. Mrs. Windham asserted the pills he had taken were those prescribed by Dr. Dudley. He was forty-four years old at the time of his death.
The first assignment of error is: Was Windham's death the result of an intentional and negligent act which constituted an independent intervening cause of death, barring recovery?
In Medart Division of Jackes-Evans Manufacturing v. Adams, 344 So.2d 141 (Miss. 1977), this Court stated:
The general rule concerning an independent intervening injury is stated in 1 Larson's Workmen's Compensation § 13.00 at 3-279, as follows:

*1324 "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." (344 So.2d at 143) (emphasis added.)
The Mississippi Workmen's Compensation Act specifically excludes compensation where intoxication or willful intention of the employee to injure or kill himself is the proximate cause of the injury. Miss. Code Ann. § 71-3-7 (1972). In the present case, intoxication was not pled as an affirmative defense nor did the proof establish that Windham was intoxicated although he had been drinking.
In determining whether or not such conduct is an independent cause, this Court adopted the quasi-course of employment rule in Burnley Shirt Corporation v. Simmons, 204 So.2d 451 (Miss. 1967), wherein it is stated:
In 1 Larson, Workmen's Compensation Law section 13.11, it is stated that whether or not the claimant's subsequent conduct is an independent intervening cause cannot be determined by reference to conventional causation principles alone; but rather the test must include a combination of "course" and "arising out of" elements. Larson comments as follows:
"Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call `quasi-course of employment.' By this expression is meant activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. Id. at 192.67-68."
It is apparent according to Professor Larson that an injury following the initial compensable injury which does not arise out of a quasi-course activity is not compensable. It is apparent, therefore, that the sacro-iliac pain which appellee experienced was not connected with the primary or subject injury and is outside the quasi-course activity test. The attorney referee found, with the Commission's concurrence, that there was no connection between the back injury and the initial electrical shock and its consequences. In 6 Schneider, Workmen's Compensation Text section 1543(f) (1948) is found the following statement which has application here:
"To create liability, the disability suffered must be the consequence of a continuous chain of causation so connected that the act or force complained of is carried through from the employment to the accident to the injury and to the disability. If an intervening independent agency breaks the chain of causation so as to destroy the original force, the employer is relieved from injuries following the termination of the force which the employment set in motion.
* * * It makes no difference how long the chain nor how many links, as long as each act or link accounts for the next, the liability existing in the first injury is carried forward to the last. But if an independent agency intervenes at any point to terminate the effect of the original accident, that ends the liability of the employer for any injuries occurring thereafter. Id. at 53-54 (footnotes omitted)." (204 So.2d at 454) (emphasis added.)
In the present case, there is no dispute that Windham suffered a compensable injury June 29, 1977, and subsequently died before being released by his doctors to resume employment. If his death, evidently caused by an overdose of medication combined with alcohol consumption, resulted from a mental disturbance which resulted from his June 29, 1977, injury, compensation must be awarded.
*1325 The medical testimony was given by Dr. William H.C. Dudley who opened as follows:
A. Basically, I don't guess I have an opinion. And this is no reflection  but I do have an opinion. Based on the various differences described in the testimony between the man before the accident and after the accident, and based on the way he looked when I saw him, and the book theory behind him, and Dr. Fleckenstein's examining him, I believe that the accident set into motion a rather severe depression and anxiety and that this  a much contributing situation to which he took, apparently, some degree of overdosage of medication while he was drinking and it's my opinion that his death occurring in that setting was a result of a combined toxicity of the alcohol and the medication. (emphasis added.)
On cross-examination, Dr. Dudley seemed to base his opinion mainly on the fact that Windham behaved differently following the accident.
A. No, it wouldn't because  well, the fact is apparently everybody agreed the man is dead and the testimony is that he came in while drinking, or under the influence of alcohol to some extent, and took a handful of pills and shortly thereafter collapsed and shortly thereafter died. And I am fully aware that I can't base an opinion on the thing that I would like to base it on. I don't think anybody else can. I'd really rather not be here because it's a difficult case for me. But, taking those things into consideration, even if it weren't Etrafon, to me it is reasonable to believe that this handful of pills when he was drinking was the most likely cause of his death. And that kind of behavior  most likely the cause of that was the accident because he didn't seem to be behaving like that before then. And there are any number of medications whose toxicity is propitiated by alcohol and vice versa. (emphasis added.)
This being the case, the relevant issue was whether Windham's death came within the quasi-course of employment disability as announced in Burnley Shirt Corporation, supra, or was his death caused by an intervening independent agency. The full commission found that it was compensable and they are the determiners of fact and we are bound thereby if there is sufficient evidence to support the finding. It is significant to note that while it was the burden of proof of the appellant here to establish an independent intervening cause, the only medical evidence offered is that of Dr. Fleckenstein who stated as follows:
Q. And I take it that on the day of his last visit to you, that he was aware of his surroundings and fully capable of knowing and realizing what he was doing?
A. Yes, it would appear to me that he was physically and mentally capable of returning to work but he did exhibit behavior that made me feel like he should continue under the care of a psychiatrist.
Q. Now, as I understand it, you do not know the cause of death, and you are not expressing any opinion as to the cause of death?
A. No, sir I do not. I have no information regarding this man's cause of death.
Q. O.K. I also understand that you are not making, expressing any opinion as to any causal connection between the injury that you treated him for and any mental condition that he may or may not have had.
A. Only in my opinion that the accident could possibly have exacerbated his anxieties.
Q. Possibly could have?
A. Right.
Q. What you are expressing there is a possibility rather than a probability?
A. Right. I think that would be another question that would be best referred to Dr. Dudley.
Thus, it is seen that appellant's assignment of error No. 2, "did the commission rely upon an erroneous legal principle in awarding death benefits" is answered in the negative.
The next assignment of error, was the hypothetical question propounded to Dr. *1326 Dudley improper? Without quoting the hypothetical, which indeed would take many pages and may have assumed one or two facts not in evidence, the rules of evidence are relaxed in workmen's compensation proceedings. This Court has spoken on the question in Goasa & Son v. Goasa, 208 So.2d 575 (Miss. 1968), as follows:
We are of the opinion this assignment of error is not well taken as the rules of evidence for the Workmen's Compensation Commission, a fact-finding agency, are not the same as that prescribed for ordinary civil actions. Much latitude is authorized the commission by way of informal conferences and hearings and permits the commission to make investigations, cause examinations to be made, and to take such further action as it considers proper to protect the rights of all the parties, as in Wells-Lamont Corp. v. Watkins, 247 Miss. 379, 386, 151 So.2d 600, 603 (1963), we stated:
"The Workmen's Compensation Commission is a fact-finding agency, organized for the purpose of determining claims for compensation. The procedure before the Commission is not that prescribed for ordinary civil actions, brought in a regular trial court. Sec. 6998-24, Miss.Code 1942, prescribes the method of procedure and authorizes the `informal conferences and hearings in contested cases' and authorizes the procedure to be `determined by rules of the commission.' Sec. 6998-19 permits the Commission to `make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as it considers will properly protect the rights of all parties.'" (208 So.2d at 578). (emphasis added.)
In conclusion, the Court feels that the medical evidence offered was somewhat strained due to the particular circumstances of this death and the failure to obtain medical help in the middle of the night or medical examination after the death to determine the exact cause of death. Nevertheless, the medical evidence offered did establish the chain of events that supports the finding of the full commission, while, on the other hand, there is no competent evidence in the record to break the chain of events to support the contention of the appellant that Windham's untimely death was the result of an independent intervening cause. Medart Div. of Jackes-Evans Mfg., supra. Therefore, this case should be and the same is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and WALKER, BROOM, ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.